

FILED

JUL 0 1 2009

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES E. BUCK, for himself and as executor of the Estate of Morgan Nevin Lewis,<br><br>        Plaintiff,<br><br>vs.<br><br>NATIONAL EDUCATION ASSOCIATION; THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; NATIONAL EDUCATION ASSOCIATION'S MEMBER BENEFITS CORPORATION,<br><br>        Defendants. | CIV. 09- 4091<br><br>**PLAINTIFF'S COMPLAINT**<br>**-AND-**<br>**JURY TRIAL DEMAND** |

COMES NOW THE PLAINTIFF, James E. Buck, for himself and as executor of the Estate of Morgan Nevin Lewis, by and through his attorneys of record, and for his Complaint against the above-named Defendants, does hereby state and allege as follows:

**The Parties and Venue**

**1.**

This action arises under the EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 [29 U.S.C. §§ 1001 et. seq.] ("ERISA") and more particularly §§ 502(a)(1)(B), 502(a)(3) and 502(c)(1) of said Act [29 U.S.C. §§ 1132(a)(1)(B), (a)(3) and (c)(1)] and 29 U.S.C. §§ 1024(b)(4), 1104, 1106, and 1109. Jurisdiction and venue of this action are proper in this Court pursuant to 29 U.S.C. § 1132(e). This Court has also subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1132 because the claims are brought under federal law and because there is complete diversity between the parties. This Court has supplemental jurisdiction over the Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to

Plaintiff's claims for which there is federal jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**2.**

The Plaintiff, James Buck, (hereinafter "Plaintiff") was the domestic partner of Morgan Lewis, Deceased, and is a resident of Palm Springs, California, and was at all times relevant hereto.  Morgan Lewis was a resident of Aberdeen, South Dakota, on the date of his death. Plaintiff, as a beneficiary under and as the executor of the Estate of Morgan Nevin Lewis, is seeking to recover death benefits, due to the murder of Morgan Lewis, under the National Education Association (hereinafter "NEA"), NEA DUES-TAB Insurance Program (an insured plan underwritten by the Defendant The Prudential Insurance Company of America) (hereinafter "Plan") for the benefit of NEA members, which is qualified under and governed by ERISA.

**3.**

Upon information and belief, Defendant NEA is a nationwide corporation with its principal place of business in Washington, DC.  NEA provided the Plan to all of its eligible members throughout the United States.  At all times relevant hereto, Morgan Lewis was an Eligible Member in good standing of the Plan.  Upon information and belief, Defendant NEA served as the plan administrator of the Plan and delegated specific administrative functions to Defendant NEA's Member Benefits Corporation (hereinafter "NEA MBC) and to The Prudential Insurance Company of America.

**4.**

Defendant The Prudential Insurance Company of America (hereinafter "Prudential") is a nationwide corporation with its principal place of business in Newark, New Jersey.  Defendant Prudential is licensed to do business and is conducting business in the State of South Dakota in the name of The Prudential Insurance Company of America.

2

## Statement of the Facts

**5.**

Morgan Lewis was an Eligible Member, as defined in the Plan, of Defendant NEA at the time of his death on November 1, 2004. *See* Exhibit A.

**6.**

Defendant NEA provided the Plan to all Eligible Members of Defendant NEA. Defendant NEA is the plan administrator for the Plan and delegated certain administrative functions to Defendant NEA MBC and Prudential.

**7.**

According to the plan documents, NEA designated Seabury & Smith, Inc. as the plan administrator. However, upon information and belief, Defendant Prudential was performing the functions of the plan administrator at all times relevant to this action.

**8.**

The Plan provided death benefits to Eligible Members while covered under the Plan. Death by homicide entitles Eligible Members to benefits under the Plan.

**9.**

The Plan provided varying levels of death benefits based upon the circumstances of the Participant's death. One such benefit is if the Eligible Member's death is caused by a homicide which occurs while the member is engaged in any activity which is in the express or implied terms of the member's occupation, the benefit payable is $150,000. Another such benefit is if the death is caused by accident or assault which occurs while the Eligible Member is engaged in any activity which is in the express or implied terms of the member's occupation, the benefit payable is $50,000.

**10.**

At the time Morgan Lewis was an Eligible Member under the Plan, he was brutally murdered on the Northern State University campus in Aberdeen, South Dakota on November 1, 2004, while engaged in activity that was within the express and implied terms of Morgan Lewis' occupation as an Assistant Professor, entitling his beneficiary and the executor of Morgan Lewis' estate, the Plaintiff, to death benefits under the Plan.

**11.**

Plaintiff filed a timely claim on June 22, 2005, for death benefits under the Plan as a result of the murder of Morgan Lewis. The claim number is 10663987.

**12.**

Approximately one year later, Plaintiff first contacted counsel in South Dakota regarding a claim for benefits under the Plan on June 20, 2006.

**13.**

Defendants apparently denied Plaintiff's timely claim for death benefits under the Plan by letter dated November 28, 2006.

**14.**

Plaintiff pursued an appeal of the apparent denial of death benefits by submitting to Defendants on December 26, 2006, overwhelming evidence that Morgan Lewis' death was not a suicide and that his death was caused by homicide.

**15.**

Defendants, by letter dated January 8, 2007, stated that to review the claim on appeal, they must be provided with legal evidence such as an amended police report that proves Morgan Lewis was murdered and did not commit suicide. Defendants further stated once legal evidence is provided they would review the appeal request.

**16.**

Plaintiff had previously submitted such legal evidence to Defendants on December 26, 2006. Defendants have repeatedly refused, without any reasonable basis, to provide the death benefits that are owed to Plaintiff pursuant to the Plan as a beneficiary and as the executor of the Estate of Morgan Nevin Lewis.

**17.**

Defendants relied upon the suicide exclusion in the Plan in denying benefits to Plaintiff. The reliance on the suicide exclusion is arbitrary and capricious given the overwhelming evidence submitted to Defendants establishing that Morgan Lewis was murdered just outside his campus office building immediately after preparing to teach his morning class.

**18.**

The evidence submitted to Defendants clearly established that Morgan Lewis did not commit suicide, but was shot in the neck from the left side with an unregistered and untraceable gun that was subsequently tossed into a campus dumpster. It is undisputed that Morgan Lewis was right-handed.

**19.**

There were no fingerprints or blood on the gun, which held six additional rounds of ammunition. There was also no blood in or on the dumpster. An empty shell casing matching the gun was discovered close to the dumpster.

**20.**

There were bruises and abrasions on Morgan's face, head, and the left side of his body indicating that he may have been struck with a blunt instrument.

**21.**

It appeared that after Morgan was shot, someone else moved his body a few feet from the place where he was shot.  The police discovered Morgan's wallet in a pool of blood in the spot where he had initially fallen.  The wallet was dropped or placed onto blood that had already seeped out onto the pavement.  The wallet had been emptied of any money that it may have contained.  Importantly, the wallet tested positive for gunshot residue *inside* the empty currency pocket where any money would have been, indicating that someone who had just fired a gun had subsequently placed his or her hand inside the wallet's currency pocket.

**22.**

Rather than conducting an independent examination of Morgan Lewis' murder, Defendants relied upon the investigation conducted by the Aberdeen Police Department and the Aberdeen Chief of Police's summary decision that Morgan Lewis, a man whose treating psychiatrist with 38 years of experience opined was not suicidal, committed an unexplainable suicide.

**23.**

Dr. Brad Randall, the coroner who performed the autopsy on Morgan Lewis, has testified and averred that there is not sufficient evidence to list the cause of Morgan Lewis' death as a suicide.  *See* Exhibit I.

**24.**

Plaintiff, as beneficiary of Morgan Lewis' death benefits under the Plan and as executor of Morgan Nevin Lewis' estate, made two written requests to Defendants for copies of all Plan documents.  The first such written request was submitted by Plaintiff's attorney by letter dated January 16, 2007.  *See* Exhibit D.  The second such written request was submitted by Plaintiff's attorney by letter dated March 19, 2007.  *See* Exhibit E.

**25.**

Plaintiff requested the plan documents in writing yet again on March 19, 2008. *See* Exhibit G.

**26.**

The Defendants did not provide the plan documents to the Plaintiff until April 3, 2008. *See* Exhibit H.  This was 443 days after the plan documents were first formerly requested from the Defendants in writing.

**27.**

The documents provided by the Defendants to the Plaintiff on April 3, 2008, included purported letters to the Plaintiff that the Plaintiff had never received, and references to purported messages left with the Plaintiff's attorneys to people who never existed. *See* Exhibit H.  These documents also included at least one letter that is a demonstrable forgery, as it is addressed to the Plaintiff's attorneys prior to the Plaintiff ever having contacted his attorneys or notifying the Defendants that Plaintiff had retained the assistance of counsel. *See* Exhibit H, Exhibit O.

**28.**

Defendants failed to timely provide the plan documents to the Plaintiff, failed to timely act upon Plaintiff's appeal and failed to timely provide a written notice of denial of Plaintiff's appeal.

**29.**

Despite representations to the contrary, it appears that the Defendants did not even begin to consider the Plaintiff's appeal until approximately April of 2008. *See* Exhibit K.

**30.**

In June of 2008, the Defendants referred the claim to their medical department for an opinion regarding the cause of Morgan Lewis's death. *See* Exhibit L.

**31.**

In July of 2008, the Defendants' own medical department issued its opinion that Morgan Lewis's death could not be classified as a suicide. *See* Exhibit M. Specifically, the Defendants' medical department found that "with a reasonable degree of medical certainty, the insured's death does not appear to be an attempt to commit suicide." *Id.*

**32.**

Based upon all of the evidence, including the conclusions of the Defendants' own medical department, the Defendants concluded that their "decision is to reverse our decision to deny and pay claim." Exhibit N.

**33.**

However, the Defendants did not, in fact, pay the benefits owed to the Plaintiff as required. Instead, they subsequently retained investigators to provide a report in an attempt to justify the denial of benefits. These investigators prepared a one-sided report purporting to support the Defendants' preferred outcome without ever speaking to Dr. Randall, Dr. Metzner, or even to James Buck.

## COUNT I

### *Breach of ERISA Plan-Denial of Death Benefits*

**34.**

Plaintiff hereby realleges paragraphs 1-33 of this Complaint and hereby incorporates them as if fully set forth herein.

**35.**

Defendants have a fiduciary obligation to Plaintiff to administer the Plan fairly and to furnish benefits according to the terms of the Plan.

**36.**

A disinterested decision maker would not have refused to provide benefits to Plaintiff for the death of participant Morgan Lewis.

**37.**

Defendants have wrongfully denied death benefits to Plaintiff, as beneficiary of Morgan Lewis' Plan benefits and as the executor of the Estate of Morgan Nevin Lewis, in violation of the plan provisions and ERISA, including, but not limited to, the following: (1) by interpreting the plan language contrary to the plain language of the Plan; (2) by acting unreasonable, arbitrary, and capricious, and abusing their discretion in their denial of death benefits; (3) by violating their contractual obligations to furnish death benefits to Plaintiff; and (4) by ignoring the overwhelming weight and credibility of evidence submitted establishing that Morgan Lewis did not commit suicide.  The denial of Plan death benefits to Plaintiff was unsupported by legally sufficient substantial evidence, and erroneous as a matter of law.

**38.**

Plaintiff is entitled to full benefits under the Plan.  As the proximate result of Defendants' conduct, Plaintiff has been damaged in the amount of death benefits that would have been provided by the Plan, including the death by homicide benefit in the amount of $150,000, plus interest.

**39.**

Defendants are liable for Plaintiff's attorney's fees and litigation costs as authorized by ERISA laws.  28 U.S.C. § 1132(g).

## COUNT II

### *Breach of ERISA Plan – Failure to Provide Plan Documents*

#### 40.

Plaintiff hereby realleges paragraphs 1-39 of this Complaint and hereby incorporates them as if fully set forth herein.

#### 41.

Plaintiff submitted a written request to Defendants for copies of all Plan documents on January 16, 2007 and again on March 19, 2007.  Defendants failed to furnish copies of the requested Plan documents, which Defendants are required by ERISA to furnish to Plaintiff pursuant to 29 U.S.C. § 1024(b)(4), until April 3, 2008, or at least 434 days.

#### 43.

The aforesaid failure to furnish copies of the requested Plan documents entitles Plaintiff to statutory penalties in the amount of up to $100 per day from the date of Defendants' failure to furnish copies of the requested Plan documents in accordance with ERISA, 29 U.S.C. § 1132(c)(1)((B).  Plaintiff is entitled to recover the amount of at least $43,400.

#### 44.

Defendants are liable for Plaintiff's attorney's fees and litigation costs as authorized by ERISA laws.  28 U.S.C. § 1132(g).

## COUNT III

### *Breach of ERISA Fiduciary Duties*

#### 45.

Plaintiff hereby realleges paragraphs 1-44 of this Complaint and hereby incorporates them as if fully set forth herein.

**45.**

The Defendants breached several fiduciary duties owed to the Plaintiff as follows and in the manner following:

(A)   The Defendants breached ERISA and their fiduciary duty of loyalty by placing their own interests above that of the Plaintiff by failing to properly investigate the case, and by failure to hire adequate assistance to investigate and evaluate the case.

(B)   The Defendants breached their fiduciary duty by interpreting the plan language contrary to the plain language of the Plan;

(C)   The Defendants breached their fiduciary duty by ignoring the overwhelming weight and credibility of evidence submitted and ignoring the conclusions of their own medical department;

(D)   Instead, the Defendants behaved as an adversary, looking instead for less credible evidence and reasons to support their goal of denying death plan benefits to Plaintiff;

(E)   By failing to timely provide written notice of the denial of Plaintiff's claim for benefits and the apparent denial of Plaintiff's claim for denial of benefits; and for failing to timely provide the reasons for such denials; and

(F)   By failing to timely furnish Plaintiff copies of all Plan documents pursuant to his written requests for such information on January 16, 2007 and March 19, 2007.

(G)   Papering the claim file with false documents that were never sent and/or cannot possibly be what they purport to be, and providing such documents to the Plaintiff in an attempt to mislead him.

**46.**

The aforementioned conduct of Defendants, including their conflicts of interest in self dealing of fiduciaries and all actions taken by Defendants as fiduciaries to act in the best interests of the participants and beneficiaries including Plaintiff, constitutes a breach of ERISA fiduciary duties tantamount to fraud for which said Defendants are jointly and severally liable for all damages caused thereby.

**47.**

As the proximate result of Defendants' conduct, Plaintiff has been damaged in the amount of coverage that would have been provided by the Defendants, in the amount of at least $150,000.00, plus emotional distress, mental anguish, interest, and attorney's fees.

**48.**

Defendants are liable for Plaintiff's attorney's fees and litigation costs as authorized by ERISA laws.

## COUNT IV

### *State law bad faith claim*

**49.**

Plaintiff hereby realleges paragraphs 1-48 of this Complaint and hereby incorporates them as if fully set forth herein.

**50.**

The conduct of the defendants, as detailed above, was vexatious and without reasonable cause, and amounts to the bad faith processing and denial of benefits, resulting in damages to the Plaintiff and entitling him to attorney fees pursuant to SDCL § 58-12-3 and punitive damages under South Dakota law pursuant to SDCL § 21-3-2.

12

## COUNT V

### *State law fraud and deceit claim*

### 51.

Plaintiff hereby realleges paragraphs 1-50 of this Complaint and hereby incorporates them as if fully set forth herein.

### 52.

The conduct of the defendants, as detailed above, and including, but not limited to, the creation of false documents (*e.g.,* Exhibit O) and the placement of purported letters to the Plaintiff in the claim file that were in fact never sent to the Plaintiff on the date claimed, was an attempt to willfully deceive the Plaintiff, with intent to induce him to alter his position to his injury or risk, resulting in damages to the Plaintiff and entitling him to punitive damages under South Dakota law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for the following relief against the Defendants:

(1)     An Order, Judgment and Decree that Defendants account for and pay to Plaintiff all death benefits accrued under the Plan and unpaid to the date of judgment with prejudgment interest thereon and such other further relief both legal and equitable as Plaintiff proves himself entitled to receive, including but not limited to damages for emotional distress and mental anguish;

(2)     An award of statutory penalties in the amount of $43,400.00, representing $100 per day from January 16, 2007 to the date Defendants mailed the requested Plan documents to Plaintiff on

April 3, 2008, for failing to furnish copies of Plan documents pursuant to Plaintiff's written requests;

(3)     An award of attorneys' fees, sales tax thereon, and costs of this action;

(4)     For declaratory and injunctive relief requiring Defendants to pay the death benefits under the Plan to Plaintiff;

(5)     For punitive damages in an amount to be determined by the jury;

(6)     For prejudgment interest, post verdict interest, and post-judgment interest herein; and

(7)     For any other and further relief as the Court or jury decides is just and proper.

Dated this 30th day of June, 2009.

JOHNSON, HEIDEPRIEM,
ABDALLAH & JOHNSON, L.L.P.

BY _RA Parsons_____

    Scott A. Abdallah
    Ronald A. Parsons, Jr.
    Pamela R. Bollweg
    Thomas R. Hensley
    P.O. Box 2348
    Sioux Falls, SD 57101-2348
    (605) 338-4304

Email: sabdallah@jhajlaw.com
       ron@jhajlaw.com
       pamela@jhajlaw.com
       tom@jhajlaw.com

*Attorneys for the Plaintiff*

14

## JURY TRIAL DEMAND

The Plaintiff hereby respectfully demands a trial by jury on all issues so triable.

_____
Ronald A. Parsons, Jr.